IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BAKKEN CONTRACTING, LLC, d/b/a BC Contracting,<br><br>           Plaintiff(s),<br><br>    vs.<br><br>THE VENUE AT WERNER PARK, LLC,<br><br>         Defendant/Third-Party Plaintiff,<br><br>    vs.<br><br>WESTERN SURETY COMPANY,<br><br>         Third-Party Defendant.<br><br>BAKKEN CONTRACTING, LLC, d/b/a BC Contracting,<br><br>         Third-Party Plaintiff,<br><br>    vs.<br><br>SEAN NEGUS CONSTRUCTION, LLC; R2 PLUMBING, LLC; GRAND RAPIDS POURED WALLS, INC., d/b/a Cherry Valley Concrete; and MAHONEY FIRE SPRINKLER, INC.,<br><br>         Third-Party Defendants. | **8:21CV269**<br><br><br><br>**MEMORANDUM AND ORDER REGARDING SNC'S MOTION FOR ATTORNEY FEES AND INTEREST** |

This litigation originated as a lawsuit by a contractor (BCC) to recover the remaining payment allegedly due from a developer (The Venue) for construction of an apartment complex and related structures in Papillion, Nebraska. The litigation eventually embroiled many more parties, counterclaims, crossclaims, and third-party claims. In a Memorandum and Order Regarding Motions for Summary Judgment, the Court among other things granted summary

1

judgment in favor of Sean Negus Construction, LLC, (SNC), a subcontractor on the project, on the causes against SNC in BCC's third-party complaint, on SNC's counterclaim against BCC, and on SNC's crossclaim against the bond company (Western). Filing 196 at 53. This case is now before the Court on SNC's Motion for Attorney Fee Award and Interest. Filing 197.[1] For the reasons stated below, SNC's Motion for Attorney Fee Award and Interest is granted, although the Court awards somewhat less for attorney's fees than SNC claimed.

## I.  INTRODUCTION

### A.  Factual Background

The factual background presented here is limited to the context of the claims for attorney's fees and interest now at issue. This context is drawn primarily from the parties' various statements of facts in support of and opposition to the various motions for summary judgment, all of which the Court has previously resolved. It involves only facts that are undisputed, unless indicated otherwise.

Plaintiff Bakken Contracting, LLC, d/b/a BC Contracting (BCC), is a limited liability company organized and existing under the laws of the state of North Dakota with its principal place of business in Fargo, North Dakota. Filing 168 at 2 (¶ 2). Defendant The Venue is a limited liability company organized and existing under the laws of the state of Wyoming with its principal place of business in Austin, Texas. Filing 168 at 2 (¶ 1). On August 21, 2018, The Venue and BCC entered into a construction contract (the Contract) for BCC's construction of an apartment complex located at 120th Street and Ballpark Way in Papillion, Sarpy County, Nebraska, known as The Venue at Werner Park (the Project), financed through the United States

---

[1] SNC's Motion for Entry of Final Judgment under Rule 54(b), Filing 225, is also pending before the Court, but that Motion will be resolved in a separate order.

Department of Housing and Urban Development. Filing 168 at 2 (¶ 4). The Project contains several apartment buildings, a community area, a parking lot with drive lanes, and various other surrounding structures and landscaping. Filing 168 at 2 (¶ 4). Western Surety Company (Western) is a corporation organized and existing under the laws of the state of South Dakota and doing business within the State of Nebraska. Filing 168 at 2 (¶ 3). On August 21, 2018, Western issued Bond No. 30035690 (the Bond) comprised of a performance bond and a payment bond in the amount of $21,122,904.00, in part performance of the Contract between The Venue and BCC. Filing 168 at 2–3 (¶ 5).

To complete its work on the Project, BCC hired various subcontractors. Filing 168 at 3 (¶ 7). One such subcontractor was Sean Negus Construction, LLC, (SNC). BCC alleges, and SNC admits, that SNC is organized under the laws of the state of Nebraska and maintains its principal place of business in Omaha, Nebraska. Filing 45 at 2 (¶ 2); Filing 72 at 2 (¶ 2). In a contract dated September 6, 2018, SNC agreed with BCC to perform work on the Project generally described as site clearing, demolition, mass excavation, earth work, site utilities, rough grading, and fine grading. Filing 165-1 at 4 (¶ 6); *see also* Filing 165-1 at 5 (¶ 10) ("SNC contracted with BCC to perform the grading operations for the project and for the installation of site utilities. . . .").

SNC began its operations on the Project in September 2018, performing the mass grading operation and site utilities including storm, sanitary, and water lines, but the parties disputed in this litigation whether SNC's work was performed in conformance with City of Omaha standards. Filing 165-1 at 5 (¶ 11); Filing 180 at 3 (¶ 11). SNC alleged that it substantially completed its work in December of 2019 and presented its final pay application in June 2020, but BCC withheld the application for final payment and that payment remained unpaid by BCC.

Filing 165-1 at 5 (¶ 13). SNC also alleged that after substantial completion of the work required pursuant to the contract, SNC was recalled to the job site for additional work at the request of BCC. Filing 165-1 at 5 (¶ 14). The affidavit of Ryan Schaefer, a Vice President of SNC, states that the last warranty work by SNC on the Project was performed in April 2021. Filing 165-3 at 604 (¶¶ 9-10). BCC disputed that SNC's work was substantially completed. Filing 180 at 3 (¶¶ 13–14).

The parties did not dispute that SNC and BCC executed nine change orders for additional work with BCC increasing its contracted amount from $875,000.00 to a total of $1,025,004.27. Filing 165-1 at 4 (¶ 15). SNC alleged that BCC has paid SNC a total of $999,379.69 leaving an unpaid balance as of June 15, 2020, in the amount of $25,625.11, which has been due and owing from and after June 15, 2020, for work that had been substantially completed in December of 2019. Filing 165-1 at 5 (¶ 16). BCC denied that the work was substantially completed and/or that it was in conformance with the requirements of the subcontract. Filing 180 at 3 (¶ 16).

### B. Procedural Background

On July 20, 2021, BCC filed the Complaint initiating this lawsuit against The Venue. Filing 1. On September 1, 2021, The Venue filed an Answer and Counterclaim denying BCC's claims and asserting five counterclaims. Filing 8. On April 20, 2022, BCC filed a Third-Party Complaint against third-party defendants including SNC. Filing 45. BCC's first three causes of action in its Third-Party Complaint were against SNC alleging, respectively, breach of contract, breach of warranty, and indemnity and/or contribution. Filing 45 at 3–5 (¶¶ 15–27). On August 1, 2022, SNC filed its Answer and Counterclaim against BCC and a Crossclaim against Western alleging BCC's failure to issue final payment of its retainage plus interest pursuant to the Nebraska Construction Prompt Pay Act and Western's failure to pay SNC's claim against the

4

bond. Filing 72 at 6–7 (¶¶ 40–43 and Prayer). There were other counterclaims, crossclaims, third-party claims, and interpleader claims at issue in this litigation, but they need not be described for present purposes.

On April 15, 2024, SNC filed its Motion for Summary Judgment. SNC's Motion for Summary Judgment first sought summary judgment on BCC's three causes of action against SNC in BCC's Third-Party Complaint, that is, BCC's claims for breach of contract, breach of warranty, and indemnity and/or contribution. Filing 165. SNC also sought summary judgment on its Counterclaim against BCC for payment of the unpaid balance due of $25,625.11 under the contract between SNC and BCC. Filing 165 at 2. Other parties also filed motions for summary judgment. *See* Filing 166; Filing 170.

The Court addressed all three motions for summary judgment in a Memorandum and Order Regarding Motions for Summary Judgment filed on June 28, 2024. Filing 196. In the part of its Memorandum and Order pertinent here, the Court concluded that SNC was entitled to summary judgment on BCC's third-party claims against it and that SNC was also entitled to summary judgment on its counterclaim against BCC for payment of the remaining unpaid balance due of $25,625.11, plus interest, under the subcontract between SNC and BCC. Filing 196 at 36. For the same reasons, the Court concluded that SNC was entitled to summary judgment on its Crossclaim against Western for payment on the bond of the remaining unpaid balance due of $25,625.11, plus interest. Filing 196 at 36.

On July 12, 2024, SNC filed the Motion for Attorney Fee Award and Interest now before the Court. Filing 197. The Motion states that it is pursuant to Federal Rule of Civil Procedure 54(d)(2), NECivR 54.4, Neb. Rev. Stat. § 44-359, and Neb. Rev. Stat. § 45-1211. Filing 197 at 2. In its Motion, SNC seeks an award of interest on the unpaid balance of $25,625.11 accruing from

and after June 30, 2020, until June 30, 2024, at the rate of 12% per annum ($12,300.04) and accruing at the rate of $8.4189 per day from June 30, 2024, until paid. Filing 197 at 2 (¶¶ 1–2). SNC also seeks an award of attorney's fees in the amount of $37,694.55 representing 188.99 hours of attorney time at the rate of $195.00 per hour for partner attorneys and 5.10 hours of attorney time at the rate of $165.00 per hour for associate attorneys and interest on the Judgment calculated at 12% per annum. Filing 197 at 2 (¶ 3). SNC did not file a supporting brief at the time it filed this Motion.

BCC did not initially oppose the Motion for Attorney Fee Award and Interest. Instead, it first obtained an extension to August 9, 2024, to file a response. Text Order, Filing 201. On August 9, 2024, BCC still did not file an opposition; instead, BCC filed a Motion to Stay Payment of Judgment Pending Outcome of Trial, which included a request that the Court stay BCC's requirement to respond to the pending Motion for Attorney Fee Award until the judgment in favor of SNC has been enforced and the litigation in its entirety has concluded. Filing 207 at 3–4. No stay was ever imposed nor did BCC otherwise seek an extension of its time to respond to SNC's Motion.

Eventually, on August 23, 2024, SNC filed its Brief in Response to [BCC's] Response to [SNC's] Motion for Attorney's Fees, Interest, Costs, and Reply to [BCC's] Motion for Stay of Execution, Filing 221, despite the fact that BCC had not filed an actual response to SNC's Motion for Attorney Fees and Interest. In this Court's view, SNC's Brief—its first brief in support of its Motion—was belated. *See* § II.A. below. However, that Brief did provide a more thorough statement of the legal and factual bases for SNC's fee claim, Filing 221 at 3–9, and for its claim for interest, Filing 221 at 9–10. After the remaining claims among other parties were settled on August 26, 2024, *see* Filing 222, a magistrate judge of this Court entered a text order

6

granting BCC a belated extension of time to respond to SNC's Motion for Attorney Fees and
Interest by August 29, 2024. Filing 223. On August 29, 2024, BCC filed a Brief in Response to
[SNC's] Motion for Attorney's Fees, Interest, [and] Costs. Filing 226. With leave of Court, SNC
then filed a Reply to [BCC's] Brief in Response to [SNC's] Motion for Attorney's Fees, Interest,
and Costs, Filing 229, on September 5, 2024, which completed the submission of the Motion for
the Court's consideration.

## II.  LEGAL ANALYSIS

### A.  Deficiencies in the Briefing of the Motion

As mentioned above, SNC did not file a supporting brief at the time it filed its Motion for
Attorney Fee Award and Interest. A local rule on motion practice in general provides in part as
follows:

> A brief is not required [in support of a motion] if (i) a motion raises no substantial
> issue of law and (ii) relief is within the court's discretion. Examples include
> motions to which all parties consent, to withdraw as counsel to a party, for an
> extension of time, or for leave to proceed in forma pauperis. If the court concludes
> that a motion raises a substantial issue of law, however, it may treat the failure to
> file a brief as an abandonment of the motion.

NECivR 7.1(a)(1)(B). Another provision of this local rule states that "the [opposing] party must
file a brief that concisely states the reasons for opposing the motion and cites to supporting
authority." NECivR 7.1(b)(1)(A). Yet another provision states that "[f]ailure to file an opposing
brief is not considered a confession of a motion but precludes the opposing party from contesting
the moving party's statement of facts." NECivR 7.1(b)(1)(C).

Another local rule, NECivR 54.3, specifically addresses applications for awards of
attorney's fees.  It states in pertinent part,

> A party applying for attorney's fees and related nontaxable expenses must support
> the application with appropriate and reliable evidence and authority, including
> affidavits and any written argument. Attorneys should follow appropriate criteria
> in connection with fee applications.

7

NECivR 54.3(b). Thus, NECivR 54.3(b) refers to supporting "authority" rather than to a supporting "brief" as NECivR 7.1 expressly does. Another local rule, NECivR 54.4, provides fee application "guidelines." It states that the "guidelines should help attorneys present to the court information essential to a reasoned explanation of the fee award." NECivR 54.4 (unnumbered first paragraph).

NECivR 7.1, the local rule on motion practice in general, applied at the very least to SNC's request for interest on the judgment—even if SNC's request for attorney's fees was subject to the more specific local rule on attorney's fees applications, NECivR 54.3. This is so because SNC's request for interest "raise[d] substantial issues of law" concerning the availability of an award of interest. As to attorney's fees applications, NECivR 54.3(b) reasonably suggests that more is required than a bare citation to rules and statutes as the basis for a fee claim without any explanation of how or why those rules and statutes apply. *See* Filing 197 at 2 (stating that SNC "moves the Court for an Order pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure and NE Civ. R. 54.4 awarding SNC reasonable attorney fees as provided for in Neb. Rev. Stat. §44-359 and Neb. Rev. Stat. §45-1211"). The "guidelines" for attorney's fees applications in NECivR 54.4 should also make clear that the movant must provide an explanation of why the award of attorney's fees in the amount claimed is appropriate.

Thus, the Court does not believe there could have been any serious doubt that a brief was required pursuant to NECivR 7.1(a)(1)(B) and NECivR 54.3(b) as supporting "authority" for SNC's fee application and claim for interest, where both parts of SNC's Motion necessarily involve "substantial issues of law" and require "a reasoned explanation." It should be readily apparent that a motion for attorney's fees and interest is a much more complicated motion both factually and legally than the examples of motions that do not require briefs set out in NECivR

7.1(a)(1)(B). NECivR 7.1(a)(1)(B) ("Examples [of motions that do not require a brief] include motions to which all parties consent, to withdraw as counsel to a party, for an extension of time, or for leave to proceed in forma pauperis."). Nevertheless, the Court will not treat SNC's failure to file a brief in the first instance as an abandonment of SNC's Motion for Attorney Fee Award and Interest pursuant to NECivR 7.1(a)(1)(B) where SNC eventually adequately briefed its Motion. Likewise, where the magistrate judge granted BCC a belated extension of time to file a response to the Motion when it became clear that BCC's deadline had not been stayed, the Court will not "preclude[ ] [BCC] from contesting [SNC's] statement of facts" in support of SNC's Motion. NECivR 7.1(b)(1)(C).

Notwithstanding the Court's willingness to consider all the briefing of this Motion, the Court cautions the parties that careful adherence to the federal and local rules is just as important in the aftermath of judgments, verdicts, or settlements as it is before and during trial.

## B. The Interest Claim

The Court will consider first SNC's claim for interest on the amount it is due on its successful claim for payment. As is its custom, the Court begins with a summary of the parties' arguments.

### 1. The Parties' Arguments

In its Motion, SNC asserts that it was granted summary judgment against BCC and Western in the amount of $25,625.11 plus interest. Filing 197 at 2 (¶ 1). SNC asserts that interest accrues from and after June 30, 2020, at the rate of 12% per annum. Filing 197 at 2 (¶ 1). SNC did not identify any authority for that rate of interest in its Motion, however. *See generally* Filing 197. In its Brief filed later, SNC asserted that it is entitled to the amount due on its contract of $25,625.11 plus interest due from and after the date of the final pay estimate submitted June 15,

2020, at the rate of 12% per annum, citing Neb. Rev. Stat. §§ 45-1205 and 45-104. Filing 221 at 2. SNC expanded on this argument by pointing out that Neb. Rev. Stat. § 45-104 specifies the rate of twelve percent per annum on money due on "any instrument in writing," and that the amount is a liquidated amount for purposes of awarding damages. Filing 221 at 8–9.

BCC states that it does not dispute that the Court held that SNC is entitled to judgment in the amount of $25,625.11, plus any applicable interest, but BCC asserts that the interest as SNC currently calculates it is unreasonable and not in compliance with Nebraska law. Filing 226 at 2. BCC first argues that SNC cannot recover interest pursuant to Neb. Rev. Stat. § 45-104 without first bringing an action pursuant to Neb. Rev. Stat. § 45-103.02, which SNC has not done. Filing 226 at 2. BCC argues that it would be appropriate to look to the Nebraska Construction Prompt Pay Act (NCPPA) as the only basis for determining interest on the awarded judgment. Filing 226 at 2. BCC argues that under an NCPPA provision, Neb. Rev. Stat. § 45-1205, SNC's acceptance of partial payment under the subcontract (*i.e.*, all but the remaining $25,625.11) bars SNC from collecting any prejudgment interest. Filing 226 at 2–3. Thus, BCC contends that any interest must instead be calculated from the date of summary judgment, June 28, 2024, at the rate of $8.42 per day. Filing 226 at 4.

In reply, SNC argues that it is entitled to prejudgment interest under Neb. Rev. Stat. § 45-104 because the subcontract between SNC and BCC is an "instrument in writing" under that provision. Filing 229 at 2. SNC argues that it is also a "claimant" on the bond, which is also an "instrument in writing." Filing 229 at 2. SNC argues that the Nebraska Supreme Court has rejected an argument like BCC's that SNC was required to file suit pursuant to Neb. Rev. Stat. § 45-103.02 to recover interest under Neb. Rev. Stat. § 45-104, because those sections are alternate and independent authorizations for prejudgment interest. Filing 229 at 3. SNC also

argues that Neb. Rev. Stat. § 45-1205 does not bar all prejudgment interest, but only interest on the amount tendered and accepted, so that SNC may still recover interest on the unpaid portion. Filing 229 at 3. SNC also asserts that it never received or accepted any progress payments or a final payment of the unpaid balance due and owing after May 31, 2020. Filing 229 at 3.

   *2.  SNC Is Entitled to Prejudgment Interest at 12% per Annum*

   The Court concludes that SNC is entitled to prejudgment interest pursuant to Neb. Rev. Stat. § 45-104 without regard to Neb. Rev. Stat. § 45-103.02. First, contrary to BCC's contentions, the Nebraska Supreme Court has clearly stated, "Sections 45-103.02 and 45-104 provide alternate and independent means of recovering prejudgment interest." *Echo Grp., Inc. v. Tradesmen Int'l*, 980 N.W.2d 869, 883–84 (Neb. 2022). That court explained further, "Section 45-103.02(2) authorizes the recovery of prejudgment interest on liquidated claims. When a claim is of the types enumerated in § 45-104, then prejudgment interest may be recovered without regard to whether the claim is liquidated." *Id.* at 884 (internal citations omitted). Thus, this Court need not decide whether SNC's claim is somehow unliquidated.

   Section 45-104—on which SNC properly relied without regard to § 45-103.02—provides as follows:

> Unless otherwise agreed, interest shall be allowed at the rate of twelve percent per annum on money due on any instrument in writing, or on settlement of the account from the day the balance shall be agreed upon, on money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof, and on money loaned or due and withheld by unreasonable delay of payment. Unless otherwise agreed or provided by law, each charge with respect to unsettled accounts between parties shall bear interest from the date of billing unless paid within thirty days from the date of billing.

Neb. Rev. Stat. § 45-104. Thus, one of the types of judgments to which § 45-104 applies a 12% per annum interest rate is "money due on any instrument in writing." *Id.*; *see also Echo Group*, 980 N.W.2d at 884. As to this type of judgment, the Nebraska Supreme Court explained,

The plain language of the statute provides insight. As set forth above, interest shall be allowed "on money due on any instrument in writing." An "instrument" is "[a]n object, device, or apparatus designed or used for a particular purpose or task." An alternative definition, specific to the legal realm, is "[a] formal legal document entailing rights and obligations, such as a contract, deed, legislative act, etc.; any document formally drawn up so as to have legal effect."

*Echo Grp.*, 980 N.W.2d at 885.

The Nebraska Supreme Court concluded that "[a] construction lien fits within these definitions" of an "instrument in writing." *Id.* This Court readily concludes that so does the subcontract between SNC and BCC because the subcontract is "[a] formal legal document entailing rights and obligations" of both SNC and BCC. *Id.* So too is the bond provided by Western. That bond provides in part,

> [BCC] and [Western Surety Company] hereby jointly and severally agree with Obligees that every Claimant, who has not been paid in full . . . may sue on this Payment Bond for the use of such Claimant, prosecute the suit to final judgment for such sum or sums as may be justly due Claimant, and have execution thereon.

Filing 229-2 at 12 (¶ 5). It defines "claimant" as follows:

> A Claimant ("Claimant") is defined as one having a direct contract with [BCC] . . . for labor, materials or equipment used in the performance of the Contract, including without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract, architectural and engineering services required for performance of the work of Contractor and Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment was furnished.

Filing 229-2 at 12 (¶ 3). Thus, the bond is an "instrument in writing"—that is, "[a] formal legal document entailing rights and obligations" of both a Claimant and Western—pursuant to which money is now due, because SNC had "a direct contract" with BCC for labor and services making

12

SNC a Claimant on the bond.[2] Therefore, SNC is entitled to prejudgment interest at 12% per annum on the remaining unpaid amount of $25,625.11 pursuant to Neb. Rev. Stat. § 45-104.

Equally unavailing is BCC's argument that SNC waived its entitlement to prejudgment interest on the remaining unpaid amount. Specifically, BCC argues that its payment to SNC of $999,379.69 of the $1,025,004.27 it owed SNC and SNC's acceptance of that payment bars prejudgment interest on the remaining unpaid amount of $25,625.11 pursuant to Neb. Rev. Stat. § 45-1205, a provision of the NCPPA. Filing 226 at 2–3. The statutory provision on which BCC relies states the following in pertinent part: "Acceptance of progress payments or a final payment shall release all claims for interest on such payments." Neb. Rev. Stat. § 45-1205 (final sentence). BCC is mistaken in its reading of this statute and in its reading of the decision of the Eighth Circuit Court of Appeals on which BCC relies in *United States for Seedorff Masonry, Inc. v. Archer Western Construction, LLC*, 836 F. App'x 465 (8th Cir. 2021), that applied the statute.

First, as a matter of plain language, the statute does not bar all prejudgment interest, but only "interest on such payment" that the claimant has "accept[ed]." Neb. Rev. Stat. § 45-1205. The phrase "such payment" plainly refers to the progress payments or a final payment that the opposing party made and the claimant accepted. *Id.* ("Acceptance of progress payments or a final payment shall release all claims for interest on such payments."). Thus, it is only "interest" on the progress payments or a final payment that is barred by the statute. In short, a claimant has not

---

[2] This conclusion defeats BCC's argument that SNC is not entitled to payment on the bond because "at no point has this Court made a finding that any of the subcontractors, including SNC, are beneficiaries" under the bond. Filing 226 at 6. Specifically, whether or not SNC is a "beneficiary" under the bond is irrelevant where SNC was a "Claimant" under the bond as a matter of law. This conclusion that SNC was a Claimant under the bond also defeats BCC's "belie[f]" that it was not the intention of this Court "for its ruling [at summary judgment] to be construed as a finding of fact on SNC's status in regards to the bond, but rather that this Court was simply granting SNC's Motion on all of their [sic] claims in order to remove SNC from litigation the Court deemed it should not be subjected to due to accepted work doctrine." Filing 226 at 5–6. Contrary to BCC's belief, the Court concluded that Western was liable to SNC on the bond because there was no genuine issue of material fact that BCC failed to pay SNC the amount due of $25,625.11 and that SNC was entitled to payment of that amount either from BCC or on the bond as a matter of law. Filing 196 at 36.

accepted an unpaid amount that the claimant is due, and interest continues to accrue on the unpaid amount.

The Eighth Circuit's decision in *Seedorff Masonry* is not to the contrary. In that case, "[a] dispute arose as to the quality of Seedorff's masonry work" as subcontractor on a project where Archer was the general contractor. 836 F. App'x at 465. After negotiations, Archer paid Seedorff $759,077.76 on April 12, 2019 (the April 2019 payment) "to satisfy some of the unpaid payment applications." *Id.* at 466. Because the parties were unable to resolve their remaining disputes, the matter proceeded to a bench trial. *Id.*

> The [district] court awarded Seedorff the amounts owed under the remaining unpaid payment applications (excluding amounts from rejected change orders) as well as interest on those amounts. The court declined to award interest on the April 2019 payment, concluding Seedorff had waived its claim when it accepted the payment. On appeal, Seedorff argues the district court erred in finding Seedorff had waived prejudgment interest on the April 2019 payment because (1) the payment was a "partial settlement payment" and not a progress payment or a final payment, and (2) it preserved its right to seek prejudgment interest in a document entitled Partial Waiver and Release of Claims for Payment.

*Seedorff Masonry*, 836 F. App'x at 466. Thus, the district court specifically awarded interest on the unpaid payment applications that it awarded to Seedorff. *Id.* What was at issue on appeal was the waiver of prejudgment interest on the partial payment made in April 2019, not the interest on the remaining unpaid payment applications on which the district court had awarded interest. *Id.*

The Eighth Circuit's resolution of the issue on appeal was as follows:

> Neb. Rev. Stat. § 45-1205 entitles a subcontractor to collect interest from a contractor if a periodic or final payment "is delayed by more than thirty days after receipt of a properly submitted periodic or final payment request." The statute further provides that "[a]cceptance of progress payments or a final payment shall release all claims for interest on such payments." The April 2019 payment satisfied some of the payment applications that Seedorff submitted during the project. The satisfaction of these applications constitutes a progress payment within the meaning of the statute. While Seedorff points to the long delay in payment, this delay does not undermine the district court's conclusion that the express terms of the statute specify that acceptance of a progress payment waives

14

all claims for interest related to that payment. When Seedorff accepted the April 2019 payment, it waived any claim for interest on the payment by operation of the statute.

*Seedorff Masonry*, 836 F. App'x at 466. Thus, consistent with this Court's reading of the statute, the Eighth Circuit agreed with the district court's conclusion in *Seedorff Masonry* "that the express terms of the statute specify that acceptance of a progress payment waives all claims for interest related to that payment," so that Seedorff had waived any claim for interest on the April 2019 payment. *Id.* Again, there was no challenge to the district court's award of interest on the remaining unpaid payment application. *Id.* at 465. Consequently, *Seedorff Masonry* does not hold that § 45-1205 bars recovery of interest on the remaining unpaid payment application if a partial payment has been accepted. It is exactly the interest on the unpaid amount that SNC now seeks.

The Court concludes that SNC is entitled to the accrued prejudgment interest on the unpaid amount of $25,625.11 at 12% per annum from June 2020 to June 30, 2024, totaling $12,300.04, and interest from June 30, 2024, until the judgment is paid at the rate of $8.42 per day.

### C. The Attorney's Fee Claim

#### 1. *Preliminary Matters*

The Court finds that it must address two preliminary matters relating to SNC's claim for attorney's fees before addressing the substance of that claim. The first issue concerns the pleading of a claim for attorney's fees, and the second concerns the authority on which the Court will rely to decide the Motion.

##### a. Pleading a Claim for Attorney's Fees

BCC argues that attorney's fees are "special damages" that must be specifically pleaded within a complaint under Federal Rule of Civil Procedure 9(g). Filing 226 at 4. SNC argues that Rule 9(g) means that a claim for attorney's fees must comply with the pleading standards set out

in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombley*, 550 U.S. 544 (2007). Filing 226 at 4. BCC asserts that SNC has failed to plead a claim for attorney's fees as required because SNC's Answer and Counterclaim/Crossclaim for Relief made only a simple statement praying that "a judgment for SNC for its costs, interest, and attorneys fees be entered," without alleging any statutory or factual support. Filing 226 at 4. SNC argues that it complied with the requirements of Rule 9(g) because its prayer for relief expressly referenced attorney's fees, and the request for such fees was based on the facts asserted in the pleadings themselves. Filing 229 at 4.

Federal Rule of Civil Procedure 9(g) concerning "Special Damages" states, "If an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g). Both parties cite the rather dated decision of *Western Casualty & Surety Co. v. Southwestern Bell Tel. Co.*, 396 F.2d 351 (8th Cir. 1968), for its statement, "Claims for attorneys' fees are also items of special damage which must be specifically pleaded under Fed.R.Civ.P. 9(g)." *Western Casualty*, 396 F.2d at 356. However, BCC cites no authority for its position that "specifically stated" within the meaning of Rule 9(g)—even if construed as "specifically pleaded" in *Western Casualty*— necessarily means pleaded to the plausibility standard set out in *Iqbal* and *Twombley*. *See generally* Filing 226 at 4. The Court has likewise found no such authority.

Moreover, what the rule itself says is not that "special damages" must be "specifically pleaded" but that they must be "specifically stated." Fed. R. Civ. P. 9(g). As SNC argues, SNC "specifically stated" its claim for attorney's fees in its Answer by expressly praying "that a judgement for SNC for its costs, interest, and attorneys fees be entered," Filing 72 at 5; praying in its Counterclaim that it "be awarded reasonable attorneys fees," Filing 72 at 6–7; and praying in its Crossclaim against Western for judgment in its favor "in the amount of the withheld

retainage, interest pursuant to the subcontract, and the Nebraska Prompt Payment [sic] Act, and attorneys fees as allowable by law," Filing 72 at 7.

This Court finds that a more recent decision of the Eighth Circuit Court of Appeals provides more useful guidance on the requirements of Rule 9(g) than the decision in *Western Casualty*. In *Brands International Corporation v. Reach Companies, LLC*, 103 F.4th 501 (8th Cir. 2024), the Eighth Circuit briefly addressed the parties' dispute about whether the plaintiff "needed to plead a request for attorney's fees." 103 F.4th at 506. In doing so, the Eighth Circuit cited *Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 923 n.10 (8th Cir. 2004), for its statement, "Courts have held attorney fees to be special damages primarily in instances when available under a contract between the parties." *Brands Int'l Corp.*, 103 F.4th at 506. Addressing this issue further only in a footnote, the Eighth Circuit explained,

> Despite *Tipton*, we decline to decide this matter on the pleading question. Even if we assume that Brands was required to plead a request for attorney's fees as special damages under Rule 9(g), we have already concluded that an award of unpleaded special damages does not violate Rule 9(g) where the prevailing party had "filed a document three weeks before trial that explicitly notified [the losing party] of his intention to seek [the unpleaded] damages." *Bowles v. Osmose Utils. Servs.*, Inc., 443 F.3d 671, 675 (8th Cir. 2006). This is because "the object of the rule is to guard against unfair surprise and ... that object is fully satisfied" where the losing party had "adequate time to conform its defense to the [prevailing party's] announced objectives." *Id.*; *see* Fed. R. Civ. P. 54(c) ("Every [non-default] final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); *Cooper v. Gen. Am. Life Ins. Co.*, 827 F.3d 729, 732 (8th Cir. 2016) (concluding that Rule 54(c) reaches its "limits" where "the failure to ask for particular relief so prejudiced the opposing party that it would be unjust to grant such relief"). We have found that a party provides insufficient notice of its intent to seek special damages in the summary judgment context when it first raises the argument in a reply brief. *See Cooper*, 827 F.3d at 732. Here, Brands's amended disclosures put Reach on notice that Brands would seek attorney's fees under the CISG over six weeks before Reach deposed Brands's owner and general manager and seven weeks before the parties cross-moved for summary judgment. It seems likely that Reach had adequate time to "conform its defense to [Brands's] announced objectives."

*Brands Int'l Corp.*, 103 F.4th 501, 507 n.2 (8th Cir. 2024).

17

This Court notes first that the *Brands International Corporation* decision did not require any particular form of pleading to satisfy Rule 9(g). *Id.* Second and more importantly the *Brands International Corporation* decision focused on the purpose of Rule 9(g) to provide notice to the opposing party that the claimant intended to seek such relief, regardless of whether that relief had actually been pleaded. *Id.* Here, SNC's Answer and Counterclaim/Crossclaim provided BCC from the start with notice of SNC's intention to seek attorney's fees as special damages. *See* Filing 72 at 5–7. BCC cannot reasonably claim surprise, and BCC just as clearly had plenty of opportunity to conform its litigation strategy to address SNC's prayers for attorney's fees. *Brands Int'l Corp.*, 103 F.4th at 570 n.2. Where Federal Rule of Civil Procedure 54(c) provides, "Every [non-default] final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings," *see Brands Int't Corp.*, 103 F.4th at 570 n.2, this Court will not require some more explicit pleading for attorney's fees than the express statement in SNC's pleadings of its intention to seek attorney's fees.

b.   Attorney's Fees Pursuant to the Insurance/Bond Statute or the NCPPA

SNC seeks a "mandatory" award of attorney's fees pursuant to Neb. Rev. Stat. § 44-359. Filing 221 at 3. That provision of Chapter 44 relating to insurance states that a court upon rendering judgment against a company, person, or association in an action "upon any type of insurance policy . . . shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his or her recovery, to be taxed as part of the costs." Neb. Rev. Stat. § 44-359. SNC argues that recovery of attorney's fees under § 44-359 has also been permitted against bonds. Filing 221 at 5. SNC argues that attorney's fees may also be granted, as a matter of discretion, under a provision of the NCPPA, Neb. Rev. Stat. § 45-1211. Filing 221 at 5.

18

BCC argues that while SNC is correct that § 44-359 provides for attorney's fees in actions brought upon insurance policies, that statute does not apply to this matter involving a construction bond, so that SNC's assertion that it is entitled to attorney's fees under § 44-359 fails as a matter of law. Filing 226 at 4. Moreover, BCC argues that § 44-359 provides for recovery only by a "beneficiary" under the insurance policy, but there has been no demonstration or finding that SNC is a "beneficiary" under the bond. Filing 226 at 5–6. However, BCC acknowledges that the Court has discretion to award attorney's fees under the NCPPA, although BCC argues that the Court should not do so in this case. Filing 226 at 6; *see also* Filing 226 at 7 (asserting that "the only appropriate statutory authority under which to view SNC's claims is the NCPPA").

The Court finds it unnecessary to become embroiled in the question of the applicability of § 44-359 in a suit involving a construction bond rather than an insurance policy and the subsidiary question of whether one must be a "beneficiary" to recover attorney's fees under that statutory provision.[3] Rather, where both parties concede that the Court has discretion to award attorney's fees in this case under the NCPPA, specifically, Neb. Rev. Stat. § 45-1211, the Court will determine whether attorney's fees should be awarded under the NCPPA.

> 2. *Attorney's Fees Under the NCPPA*
>> a. The Parties' Arguments

In support of its argument that it is entitled to attorney's fees in the Court's discretion under the NCPPA, Neb. Rev. Stat. § 45-1211, SNC argues that BCC had a legal obligation to make final payment to SNC, so SNC should receive attorney's fees related to claims for

---

[3] The Court finds it unnecessary to do so, even though the Court is far from convinced that BCC's arguments about the inapplicability of § 44-359 are correct.

19

nonpayment. Filing 221 at 6. SNC argues that the amount of attorney's fees it seeks is reasonable because BCC's litigation strategy meant that instead of SNC being involved in a simple action for final payment on its subcontract, SNC became responsible for defending claims in a multiparty federal lawsuit with a claimed potential exposure for contribution in excess of $2 million. Filing 221 at 8. SNC argues that it consequently incurred extensive legal fees through increased technical discovery that could not be ignored. Filing 221 at 8.

BCC contends that even if attorney's fees might be awarded under § 45-1211, the Court should not exercise its discretion to award attorney's fees in this case because SNC's requested fees are unreasonable. Filing 226 at 7. The centerpiece of BCC's argument is that SNC has failed to meet its burden to present sufficient evidence to establish the reasonableness of its requested fees. Filing 226 at 7. BCC contends that SNC relies on two terse and inadequate paragraphs of explanation for the reasonableness of the attorney's fees claimed in the affidavit of SNC's counsel. Filing 226 at 7–8 (citing and quoting Filing 197-1 at 3 (¶ 14), 4 (¶ 18)). BCC asserts that it is not enough to set forth the attorney's standard hourly rate, the number of hours expended, and a cursory summary of services performed. Filing 226 at 8. BCC points out that SNC's counsel does not state his hourly rate or any claim that the hours expended were reasonable, nor does SNC present any proof of the fee agreement between SNC and its counsel. Filing 226 at 8. BCC also complains that the majority of the time entries in SNC's billing records combine multiple distinct items in single blocks of time, so that the Court will be unable to ascertain whether the time alleged was reasonably expended. Filing 226 at 8. BCC also argues that none of the time entries show with any certainty what attorney was responsible for the entry, Filing 226 at 9, adding that BCC finds it "unlikely" that a partner was responsible for the vast majority of the billed time (188.99 out of 194.09 hours) no matter how complex the matter might be. Filing

20

226 at 10. BCC also disagrees with SNC's assertion that SNC was "forced" to participate in this extensive litigation because BCC contends that SNC's motion to dismiss BCC's third-party claims against it were premised on improper jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) rather than failure to state claims upon which relief can be granted. Filing 226 at 10. Finally, BCC contends that the Court should consider awarding SNC attorney's fees only for the preparation of SNC's successful summary judgment motion rather than for the entire duration of the case. Filing 226 at 10–11.

In reply, SNC argues that it has offered sufficient evidence to establish the reasonableness of the requested attorney's fees based on the affidavit of its counsel and the affidavit of another attorney who describes the hourly rates charged ($195 for partners and $165 for associates) to be reasonable for the work performed and that the work was fair, reasonable, and necessary for the prosecution and defense of claims in this case. Filing 229 at 5.

### b. Applicable Standards

The NCPPA provides that an individual or firm "may bring an action to recover any damages caused to such person or entity by a violation of the Nebraska Construction Prompt Pay Act." Neb. Rev. Stat. § 45-1211. It provides further, "In addition to an award of damages, the court may award a plaintiff reasonable attorney's fees and costs as the court determines is appropriate." *Id.* The parties have not directed the Court to any decisions of Nebraska courts setting out standards specifically for an award of reasonable attorney's fees under the NCPPA and the Court has found none. However, the Nebraska Supreme Court has provided guidance on how courts are to determine a reasonable attorney's fee under Nebraska law more generally.

For example, in *Brumbaugh v. Bendorf*, the Nebraska Supreme Court observed, "When an attorney fee is authorized [by statute], the amount of the fee also is addressed to the trial court's discretion." 945 N.W.2d 116, 122 (Neb. 2020). The court explained,

> We have generally said that if an attorney seeks a statutory attorney fee, that attorney should introduce at least an affidavit showing a list of the services rendered, the time spent, and the charges made. We have cautioned that litigants who do not file an affidavit or present other evidence risk the loss of attorney fees, because of the difficulty of discerning such information from the record alone.

*Brumbaugh*, 945 N.W.2d at 123 (cleaned up with quotation marks and citations omitted). The court explained further,

> An award of attorney fees involves consideration of such factors as the nature of the case, the services performed and results obtained, the length of time required for preparation and presentation of the case, the customary charges of the bar, and general equities of the case.

*Brumbaugh*, 945 N.W.2d at 123 (citations omitted); *see also N. Star Mut. Ins. Co. v. Miller*, 977 N.W.2d 195, 206 (Neb. 2022) (stating in a case seeking attorney's fees pursuant to § 44-359, "To determine proper and reasonable attorney fees, it is necessary for the court to consider the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services. There is no presumption of reasonableness placed on the amount of attorney fees offered by the party requesting fees."). In other words, "[i]n order for the reasonableness of a particular fee to be determined, the extent and value of the lawyer's services must first be established." *Brauer v. Hartmann*, 987 N.W.2d 604, 610 (Neb. 2023). Finally, where circumstances warrant—such as when a party recovers substantially less than it sought—a district court does not abuse its discretion in awarding no fees at all, *Brumbaugh*, 945 N.W.2d at 123—and presumably may award only a reduced amount of attorney's fees.

22

> c. Applying Appropriate Standards, Some Adjustment to the Claimed Fees Is Appropriate

SNC's counsel has made at least the minimal initial showing required for an award of attorney's fees under the NCPPA, because he produced an affidavit showing a list of the services rendered, the time spent, and the charges made, *see* Filing 197-1, accompanied by billing records, *see* Filing 197-2; Filing 197-3. *Brumbaugh*, 945 N.W.2d at 123 (stating that "if an attorney seeks a statutory attorney fee, that attorney should introduce at least an affidavit showing a list of the services rendered, the time spent, and the charges made"). However, this showing does not mean that all difficulties in determining the reasonableness of the claimed fees have been ameliorated, as the Court will explain below. *Cf. id.* ("We have cautioned that litigants who do not file an affidavit or present other evidence risk the loss of attorney fees, because of the difficulty of discerning such information from the record alone.").

It is apparent from the Court's knowledge of the record that the case became more complicated requiring considerably more time than an action narrowly focused on recovery of unpaid amounts due under a construction contract. *Id.* (considering "the nature of the case [and] the length of time required for preparation and presentation of the case"); *N. Star Mut. Ins. Co.*, 977 N.W.2d at 206 (considering "the nature of the litigation [and] the time and labor required"). The Court concurs in the following assertion by SNC's counsel:

> Due to the complexity resulting from this multiparty case, legal fees were incurred through the increased discovery including the review of expert witness reports from six (6) designated expert witnesses and preparation for and attend the depositions of four such expert witnesses, responding to discovery requests and review of all discovery from all parties including the review of records in excess of 8,000 pages of documents produced in the action.

Filing 197-1 at 3 (¶ 14); *see also* Filing 197-1 at 4 (¶ 18) ("All of the legal fees incurred were necessitated by the complexity of the action involving five Third-Party Defendants together with

the issues created and existing between the Plaintiff and the Defendant and the volume of the related discovery all of which resulted in increased legal services."). Contrary to BCC's contentions, SNC's decision not to file a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) does not demonstrate that SNC's participation in the case was not "forced" or complicated by BCC's litigation strategy of asserting contribution claims against subcontractors—especially where BCC's contribution claim against SNC was ill-founded. *Contra* Filing 226 at 10. Indeed, considering the equities in the case, *Brumbaugh*, 945 N.W.2d at 123, BCC's conduct complicating this litigation warrants awarding SNC attorney's fees for SNC's entire involvement in the case not just for SNC's successful summary judgment motion. *Contra* Filing 226 at 10–11.

The Court is also satisfied that SNC's counsel has demonstrated the reasonableness of the hourly rates charged by SNC's attorneys compared to the customary charges of the bar. *Brumbaugh*, 945 N.W.2d at 123 (considering "the customary charges of the bar"). Indeed, the hourly rates of $195 for partners and $165 for associates are considerably less than the rates asserted by other attorneys in recent litigation in this Court and below rates that this Court has accepted as reasonable in other circumstances, albeit ones perhaps involving more specialized legal expertise. *See Benson v. City of Lincoln*, No. 4:18CV3127, 2024 WL 2155139, at *15 (D. Neb. May 13, 2024) (reiterating the Court's prior findings that an hourly rate of $350 would be at the top of the regional legal market for employment litigation); *Beran v. VSL N. Platte LLC*, 2023 WL 6883630, at *5 (D. Neb. Oct. 18, 2023) (stating that $350 per hour is "at the top of the regional legal market" for employment litigation).

What the Court does not find satisfactory is SNC's counsel's recordkeeping, which complicates the Court's determination of the reasonableness of the services rendered, the time

spent, and the charges made. *See Brumbaugh*, 945 N.W.2d at 123 (indicating this is the goal of

the affidavit and other documentation supporting an attorney's fee claim). There are ubiquitous

examples of "block billing" in the proffered billing records, that is, "a paragraph containing

multiple tasks with only one increment of time noted (like 3.20 hours) and one amount billed

($304.00) for the collection of listed tasks." *Benson*, 2024 WL 2155139, at *20 (quoting *Bowen*

*v. Allied Prop. & Cas. Ins. Co.*, No. 4:11CV3163, 2013 WL 942443, at *6 n.14 (D. Neb. Mar.

11, 2013), and also citing *Gen. Elec. Cap. Corp. v. FPL Serv. Corp.*, No. C 13-59-MWB, 2014

WL 12907754, at *2 (N.D. Iowa Mar. 26, 2014)). Indeed, it appears that all the billing records

are full-day tallies for work on the case.[4] Such block billing is—at the very least—inappropriate

under a local rule of this Court, NECivR 54.4(a), which states "guidelines" for fee applications.

In most pertinent part, that local rule states the following:

> 54.4 Fee Application Guidelines.
>
> With respect to services performed and expenses incurred in any case, including a
> Criminal Justice Act case, the following guidelines should help attorneys present
> to the court information essential to a reasoned explanation of the fee award.
> Attorneys should also review the most recent circuit court decisions for additional
> guidance. These fee guidelines also may be appropriate in applications for
> sanctions.
>
> (a) Services Performed.
>
> (1) Identify with particularity the work done.

---

[4] The first five examples of block billing in SNC's counsel's billing records for "blocks" of more than two hours
are the following: Filing 197-2 at 2 (1/16/2023, 3.00 hours for "work on answers to interrogatories and responses to
request for production of documents; forward draft to Sean for review and request for meeting to complete and
finalize"), 2 (2/6/2023, 2.75 hours for "meeting with Ryan to review documents and answers to interrogatories and
request for production of documents; work on drafting of production of documents"); 2 (2/8/2023, 2.25 hours for
"work on discovery responses; redraft answers; review additional records from job file; receipt of certified payroll
for job; review same"), 3 (5/10/2023, 3.75 hours for "review discovery responses from plumbing contractor (R-2
Plumbing); emails to/from Ryan regarding punch lists or warranty claims; review responses from Bakken
Construction to interrogatories from Bakken Construction; review of documents from R-2 Plumbing; email to Ryan
regarding punch list or warranty demands"), 5 (8/8/2023, 5.50 hours for "meeting with R. Schaefer regarding
preparation of deposition of expert D. Heine; review documents for deposition and prepare for examination") (all
reduced to lower case from all capital letters).

(A) For a conference, state who was present, the subjects discussed, and how long it lasted.

(B) For research, state who did it, the subjects and issues researched, and whether the results were incorporated into a brief, motion, or pleading.

(C) For travel time, segregate it, state who traveled, and the purpose and mode of travel.

(D) For filings, identify the filing and who prepared it.

NECivR 54.4(a)(1).

While the problem of block billing is ubiquitous here, the extent of the percentage reduction the Court will impose for the resulting difficulties in determining the reasonableness of the fees claimed is tempered by both the reasonableness of the hourly rates claimed and the apparent reasonableness of the total number of hours claimed for the kind of litigation at issue. As the Court observed above, SNC seeks an award of attorney's fees in the amount of $37,694.55 representing 188.99 hours of attorney time at the rate of $195.00 per hour for partner attorneys and 5.10 hours of attorney time at the rate of $165.00 per hour for associate attorneys. Filing 197 at 2 (¶ 3). As also mentioned above, the Court is satisfied that SNC's counsel has demonstrated the reasonableness of the hourly rates charged by SNC's attorneys compared to the customary charges of the bar. Unlike BCC, the Court does not find it "unlikely" that a partner was responsible for the vast majority of the billed time, *contra* Filing 226 at 10, where the law firm involved is known to the Court to be quite small. The Court also finds that the number of hours claimed by SNC's counsel would have been within the realm of reasonableness had SNC's counsel sufficiently documented the tasks involved. The Court makes this conclusion in light of the length of the case, the burdens imposed by discovery in a multiparty and multiclaim case, and SNC's potential exposure. *See, e.g.*, Filing 197-1 at 3 (¶ 14); *see also* Filing 197-1 at 4 (¶ 18). However, the Court is not able to conclude that all the time claimed is reasonable due to the

vagueness resulting from block billing which has deprived the Court of sufficient information and description for a more precise determination of reasonableness.

Although this Court did not hesitate to impose a 20% reduction of attorney's fees claimed for block billing and vagueness of billing records in another case where neither the hourly rates nor the hours claimed were reasonable, *see Benson*, 2024 WL 2155139, at *24, the Court finds a 10% reduction sufficient in this case. The Court concludes that such a reduction results in a fee award that ultimately is reasonable in this case to reflect the value of SNC's lawyers' services. *Brauer*, 987 N.W.2d at 610 (explaining that the reasonableness of an award of attorney's fee depends in large part on the value of the lawyer's services).

Consequently, SNC's award for attorney's fees will be reduced from the $37,694.55 requested by 10% ($3,769.46) to $33,925.09 for block billing and vague records.[5] The Court will award SNC $33,925.09 in attorney's fees pursuant to the NCPPA to be added to the judgment in this case.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that SNC's Motion for Attorney Fee Award and Interest, Filing 197, is granted as follows:

1.      SNC is awarded to the accrued prejudgment interest on the unpaid amount of $25,625.11 at 12% per annum from June 2020 to June 30, 2024, totaling $12,300.04, and interest from June 30, 2024, until the judgment is paid at the rate of $8.42 per day; and

---

[5] $37,694.55 x .10 = $3,769.46 and $37,694.55 − $3,769.46 = $33,925.09. As a check $37,694.55 x .90 = $33,925.095.

      2.       SNC is awarded $33,925.09 in attorney's fees pursuant to the NCPPA to be added to the judgment in this case.

      Dated this 17th day of September, 2024.

                               BY THE COURT:

                                 _____

                               Brian C. Buescher
                               United States District Judge